UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITIZENS INSURANCE CO. OF
AMERICA, as Subrogee of
GRACELAND FRUIT, INC.,                              Case No. 1:04-CV-385

    Plaintiff,

and                                                 Hon. Richard Alan Enslen

GRACELAND FRUIT, INC.

    Plaintiff/Counter-Defendant,

v.

KIC CHEMICALS, INC.,

    Defendant/Counter-Plaintiff/
    Third-Party Plaintiff,

v.

CFC, INC., d/b/a COLUMBUS FOODS
CO., INC. or COLUMBUS FOODS CO.,

    Third-Party Defendant.                       **OPINION**
_____/

    This matter is before the Court on Defendant KIC Chemicals, Inc.'s Motion for Summary Judgment against Plaintiffs Citizens Insurance Company of America and Graceland Fruit, Inc., pursuant to Federal Rule of Civil Procedure 56. The Motion has been fully briefed and the Court discerns no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

**I.    BACKGROUND**

    This case arises from a commercial transaction between Graceland Fruit, Inc. ("Graceland") and KIC Chemicals, Inc. ("KIC") for the purchase of three batches of mid-oleic sunflower oil. The

action is brought by Graceland and its insurer, Citizens Insurance Company of America as subrogee. KIC filed suit against its supplier of the oil, Third-Party Defendant Columbus Foods Company, Inc. ("Columbus") who in turn filed against the manufacturer of the oil, Archer Daniels Midland Co. ("Archer").

KIC is a distributor of chemical components used for industrial and food manufacturing applications. Graceland is a Michigan based manufacturer of dried fruit and vegetable products. As part of the process of drying fruit, Graceland sprays sunflower oil over the fruit to prevent it from sticking together. (Mot. Ex. A, Terwillinger Dep. at 31-32.) Graceland generally used a high-oleic sunflower oil for this purpose because of its suitability for its purpose. (Mot. Ex. B, Taber Dep. at 261-62.) In the Spring of 2001, there was a shortage of high-oleic sunflower oil such that Graceland faced a shutdown unless a substitute for the sunflower oil could be found. (Resp. Ex. 1, Evans Dep. at 59.) Graceland decided that it would substitute mid-oleic sunflower oil based on the fact that Ocean Spray had been using mid-oleic sunflower oil on its cranberries that Graceland packaged for them. (*Id*. at 59-60, 90 & Ex. A, Terwilliger Dep. at 214.)

Graceland's Procurement Manager Ben Evans then called Larry De Masi, a KIC salesman, after receiving his information from a contact at Ocean Spray. (Resp. Ex. 1, Evans Dep. at 60.) Mr. De Masi was informed that Graceland needed an oil which was to be used in a drying operation similar to Ocean Spray's use (on cranberries), but no specifics as to the process or what fruit was to be dried were ever discussed. (*Id*. at 91.) Graceland requested a specifications sheet on the oil which it received from KIC; however, Graceland never indicated what specifications it was seeking. (*Id*. at 92.) After receiving the specifications sheets, Dr. Nirmal Sinha of Research and Development at Graceland requested the following information prior to Graceland's purchase to determine if the

oil would be appropriate for use: the storage temperature, shelf-life at room temp, maximum age of product shipped, any special needs for the product, where it was currently used and "key customer feedback[]."[1]  (Resp. Ex. 7, Sinha Expert Report at 2.)  Graceland also contends it relied upon a follow-up letter authored by Mr. De Masi which provided the acid content of the oil, described the "Active Oxygen Method" test and defined the acronym OSI (oil stability index).[2]  (Resp. Ex. 6.)  Plaintiffs assert this communication and the specifications sheet gave the appearance that KIC was the manufacturer of the oil.[3]

Graceland determined the mid-oleic sunflower oil would be a viable alternative based on Ocean Spray's use, viewing the specification sheet and asking KIC three follow up questions.  Graceland then ordered the oil and upon shipment of the oil, began using it as needed.  Graceland contracted for three shipments of the oil, as evidenced by three separate contracts dated June 29, 2001; August 21, 2001; and October 22, 2001.  (Mot. Ex. E.)  Further, although Plaintiffs dispute ever receiving the terms and conditions with the first two contracts, Plaintiffs admit they did receive and execute the full October contract and were on notice of the terms of that contract.  (*See* Reply Ex. 1 & Reply Ex. 4, Terwilliger Dep. at 244, 252-62.)  Each shipment from KIC was supplied by

---

[1]The Court notes that although Dr. Sinha states he relied on a certificate of analysis ("COA") as one item to determine whether the oil was appropriate for use prior to purchase, he makes clear in his expert report that the COA was requested "with shipment."  Therefore, this COA could not have been relied upon in determining *prior* to purchase whether the oil would be appropriate for the use Graceland intended.  (*See* Resp. Ex. 7, Sinha Expert Report at 2.)

[2]Plaintiffs appear to argue Graceland relied on multiple follow-ups and conversations with Mr. De Masi.  However, both the letter, expert report, and deposition offered for this point all relate to *one* follow-up letter being supplied by KIC.  (*See* Resp. at 5; Resp. Ex. 2, Terwillinger Dep. at 172; Resp. Ex. 7, Expert Report at 2; Resp. Ex. 6, follow up letter.)

[3]The Court notes the specifications sheet states that the information was provided by others and disclaims all warranties or liability.  (*See* Resp. Ex. 5.)

Columbus, who carried out its own testing prior to shipment to verify the specifications of the product, both after purchase from Archer and before shipment to KIC. (Mot. Ex. F, Cummisford Dep. at 39, 41, 57-58.) Columbus provided Product Quality Reports verifying the specifications of the orders based on the testing done prior to the sealing of the oil drums to KIC. (Mot. Ex. I.)

It is undisputed that Graceland did not conduct any tests on the mid-oleic sunflower oil, nor did it conduct any test batches of fruit using the new alternative oil prior to purchasing from KIC. Graceland's Quality Control Manager at the time, Dan Taber, testified there was nothing about the three shipments upon delivery or application that led him to believe anything was amiss with the oil. (Mot. Ex. B, Taber Dep. at 112.) Mr. Taber went on to state, "As we learned through our further investigation, it was a time issue of the oil sitting on the product that creates the advanced degradation." (*Id.*) Graceland had received two complaints about its' products, one in August and one in November of 2001, when it decided to send samples of the oil to Silliker Laboratories to be tested. (*Id.* at 130-31.) Upon determining it did not have the relevant COA's, Graceland requested COA's from KIC sometime after receiving the second complaint about their product having an oily odor and flavor. (Resp. Ex. 1, Evans Dep. at 86-88 & Resp. Ex. 3, Taber Dep. at 119-20.) The COA's and the previously received specification sheets differed on the iodine level. In the COA, the acceptable level was cited as a range of 95-110, while the specification sheet stated the acceptable level at 95-105. The report from Silliker Laboratory showed the sample did not meet the specifications (for iodine and peroxide levels) of the specification sheet or the COA provided by KIC. (*See* Resp. Ex. 10 & Reply Ex. 8.)

In the Summer of 2004, Plaintiffs filed this action alleging breach of contract, negligence, fraud and misrepresentation, and breach of express and implied warranties. KIC has since filed a

counter-claim for payment under the October sales contract. KIC then impleaded Columbus as KIC's supplier of the oil. Columbus subsequently impleaded Archer as the manufacturer. Columbus' Third-Party Complaint against Archer was dismissed upon summary judgment. KIC now moves for summary judgment against Citizens and Graceland.

## II.  LEGAL STANDARDS

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in [its] favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies its burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. "The 'mere

possibility' of a factual dispute is not enough,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the submission of *de minimis* evidence. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

### III. ANALYSIS

A.   KIC Chemicals, Inc.'s Motion for Summary Judgment

1.   October Contract

It is undisputed that there is a binding contract between KIC and Graceland pursuant to the October sales contract. Plaintiffs have admitted they executed the contract and were on notice of the terms and conditions. One of these terms was a statute of limitations, which provided:

> It is hereby agreed that any claim by Buyer is barred unless Buyer initiates legal proceedings within one year after the claimed breach occurred, failing which operates as an absolute bar to the Buyer's commencement of a legal proceedings and a waiver of all claims by the Buyer.

(Mot. Ex. E.)  Under both Michigan and New York law parties are able to contract for different and shorter limitation periods than those applicable under state law. *Rory v. Cont'l Ins. Co.*, 473 Mich. 457 (2005); *Fitzpatrick & Weller, Inc. v. Miller*, 765 N.Y.S.2d 555 (2003). It is clear Plaintiffs agreed to this term by signing and returning the contract. Plaintiffs filed this action in June 2004, which was more than one year after the claimed breach occurred. Although Plaintiffs argue KIC cannot assert this affirmative defense because they failed to raise it in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the argument is without merit. KIC properly asserted this claim in its Answer to Plaintiffs' Complaint. Rule 8(c) provides that this affirmative defense is waived if not asserted in a defendant's answer, and there is no rule nor case law which provides waiver if the affirmative defense is not asserted in a motion to dismiss. Therefore, pursuant to the

plain terms of the contract, all claims in the action are time barred as to the October shipment of sunflower oil.

2.      June and August Contracts

The remaining claims therefore apply to the June and August shipments of sunflower oil by KIC to Graceland. Plaintiffs have admitted they accepted delivery of both shipments without protest or notice of any condition. (Reply, Ex. 1 at 3.) Plaintiffs have failed to assert or offer any evidence that they rejected or revoked acceptance of the shipments. It is undisputed Plaintiffs used the June and August shipments of sunflower oil without doing any testing of the oil. It is further undisputed that Plaintiffs have not offered any evidence, nor can they, of the properties of the oil at the time it was tendered, accepted or used on its fruit.

Plaintiffs allege a breach of contract on the basis that KIC provided poor quality oil which was off specification for its purpose. (Compl. ¶ 17.) The threshold issue in this action is whether Plaintiffs can establish that the June and August shipments were off-specification when delivered. With no testing evidence at the time of delivery or use, Plaintiffs appear to rely on testing done in November to support the argument that the oil was off specification in June and August. Plaintiffs have also failed to show that the testing conducted in November (four or five months after acceptance) was actually done on samples from June or August. (*See* Reply Ex. 8.) As a result, even in a light most favorable to Plaintiffs, the evidence and testimony fails to create a genuine issue of material fact as to whether the oil conformed with the contract specifications at the time of delivery. Accordingly, Plaintiffs cannot show the contract was breached and summary judgment is appropriate.

3.     Warranty Claims

Plaintiffs' breach of an express warranty claim (Count V) and implied warranty for fitness claim (Count VI) also fail as a matter of law for the reason Plaintiffs have failed to show that the oil was of "poor quality and inappropriate for use" on their product. (Compl. ¶ 39.) Plaintiffs cannot show KIC failed to conform to the specifications in the COA or that the oil was not suitable for its use at the time of its delivery. Even viewed in a light most favorable to Plaintiffs, Plaintiffs have failed to carry their burden and summary judgment is appropriate as to these counts.

In the alternative, Plaintiffs' allegations of KIC's breach of an implied warranty for fitness also fails because Plaintiffs cannot establish KIC knew of the particular purpose for the oil or that Graceland relied on KIC's skill and judgment. An implied warranty that goods are fit for a particular purpose exists:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Mich. Comp. Law § 440.2315; *see also Leavitt v. Monaco Coach Corp.*, 616 N.W.2d 175 (2000). In the present case, testimony from Graceland's procurement manager, Ben Evans, shows that Graceland did not explain to KIC on what fruit the oil would be used or the manufacturing process Graceland employed. (Mot. Ex. C, Evans Dep. 82-83, 91-92.) Further, Evans testified that he did not ask for any technical expertise from KIC nor did Mr. De Masi offer any advice in how to use the sunflower oil in production. (*Id.* at 83.) In fact, Evans stated although he would solicit advice from outside suppliers about how to use a new product, he would not have asked for such advice about sunflower oil in 2001. (*Id.*)

Plaintiffs argue that because KIC was aware they were going to use the oil in the same fashion as Ocean Spray, KIC was aware of their "particular purpose." This assertion is without support. First, there is no showing that KIC was aware of the type of fruit Graceland planed to coat with their product. Further, there were no complaints about cranberries dried with the oil. (*Id*. at 157.) This is significant as Ocean Spray's use for the oil was on cranberries, Graceland requested the oil Ocean Spray used and KIC was without knowledge as to what types of fruit Graceland intended to use. Therefore, to the extent KIC was aware that Graceland was planning on using the oil for the purpose of drying cranberries, Plaintiffs have failed to evidence that the oil was not fit.

Additionally and just as fatal to their claim, Plaintiffs have failed to show Graceland relied in any way upon KIC's "skill or judgment." Indeed, the evidence offered by Plaintiffs shows as of November 2001, after customer complaints were lodged, KIC did not know exactly how the oil was to be used. (*See* Resp. Ex. 14, De Masi's letter to Graceland requesting "a detailed description of what [Graceland] intend[s] to do with the mid-oleic sunflower oil.") Plaintiffs lack any evidence or testimony which supports their assertion that Graceland relied on KIC's "expertise" or that KIC was aware of any reliance. Plaintiffs have only shown they requested a specifications sheet and asked three follow up questions – missing is any evidence that KIC was aware of what specifications Graceland required. Therefore, there is no genuine issue of material fact as to whether KIC breached an implied warranty for a particular purpose and summary judgment is appropriate.

4.      Tort Claims

Plaintiffs have asserted claims of negligence, fraud and misrepresentation. These claims fail as a matter of law because the claims are barred by the Economic Loss Doctrine. As the Michigan Supreme Court stated "The Economic Loss Doctrine . . . provides that [w]here a purchaser's

expectations in a sale are frustrated because the product he bought it not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Neibarger v. Universal Coops., Inc.*, 439 Mich. 512, 520 (1992) (internal citation omitted). "Where a plaintiff seeks to recover only for economic injuries caused by a defective product purchased for commercial purposes, contract principles, as supplied by the UCC, provide the exclusive remedy for such a claim." *Covergent Group Corp. v. County of Kent*, 266 F. Supp. 2d 647, 659 (W.D. Mich. 2003) (citation omitted). The Economic Loss Doctrine "hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." *Neibarger*, 439 Mich. at 520-21.

In the present action, Plaintiffs seek economic damages for a defective product which was purchased for commercial purposes and to which the UCC provides remedy. Specifically, Plaintiffs allege KIC made false representations about its status as a manufacturer and was negligent by supplying a defective product. (Compl. ¶¶ 23, 28.) Plaintiffs attempt to differentiate these claims by referring to the situation as "unique" on the basis that the oil wasn't defective, it was the wrong product all together. To the contrary, there is nothing unique about this case – Plaintiffs' assert they were economically harmed because the product they purchased did not conform to specifications in a contract. This is a case which sounds in contract, not tort and which the sole remedy lies in the UCC. Therefore, Plaintiffs tort claims are barred by the Economic Loss Doctrine.

    5.    KIC's Counter-claim

KIC has moved for summary judgment as to its claim that Graceland breached the October Sales Contract by failing to pay KIC for the shipment of oil. Graceland admits it signed and executed the October Sales Contract. There is also no dispute that Graceland has failed to pay KIC for the shipment. Plaintiffs argue summary judgment on this issue is inappropriate because genuine issues of fact exist as to all of their claims including the October Sales Contract. As evidenced by the Court's prior analysis, however, all of Plaintiffs' claims fail as a matter of law. It has also been determined that Plaintiffs were bound by the October Sales Contract and its terms, one of which stated "in the event of Buyer's breach of any part of this contract, Buyer shall be liable for all Seller's damages, costs and expenses arising out of that breach including Seller's legal fees and expenses." (Mot. Ex. E.) Therefore, Plaintiffs have failed to show there exists any genuine issue of material fact as to Graceland's breach of the October Sales Contract. Accordingly, KIC is entitled to the contract price of $5,610.00 plus post-judgment interest and reasonable attorneys fees as designated by Federal Rule of Civil Procedure 54. *See Estate of Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 408 (6th Cir. 2000) (holding in diversity cases, post-judment interest is determined by federal law.)

B.    Columbus Foods Company, Inc.

Columbus Foods Company, Inc. has moved for summary judgment against KIC. KIC in response argued there remained a genuine issue of material fact as to whether a fact finder would find KIC liable for Plaintiffs' damages which would trigger the indemnification set forth in Columbus' contract with KIC. However, Columbus' Motion for Summary Judgment is now moot because the Court has determined KIC is entitled to summary judgment on all counts. As a result,

there is no longer a question as to whether Columbus will be forced to indemnify KIC. Accordingly, KIC's Third-Party Complaint against Columbus will be dismissed.

## IV. CONCLUSION

Tthe Court will grant KIC's Motion for Summary Judgment. The Court will deny Columbus' Motion for Summary Judgment as moot and dismiss KIC's Third-Party Complaint against Columbus. A Judgment consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>April 27, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |