UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CITIZENS INSURANCE CO. OF
AMERICA, as Subrogee of
GRACELAND FRUIT, INC.,

        Plaintiff,                                    Case No. 1:04-CV-385

and

                                  HON. RICHARD ALAN ENSLEN

GRACELAND FRUIT, INC.

        Plaintiff/Counter-Defendant,

v.

KIC CHEMICALS, INC.,

        Defendant/Counter-Plaintiff/
        Third-Party Plaintiff,

v.

CFC, INC., d/b/a COLUMBUS FOODS
CO., INC. or COLUMBUS FOODS CO.,

        Third-Party Defendant                    **OPINION**
_____/

      This matter is before the Court on Defendant/Counter-Plaintiff/Third-Party Plaintiff KIC

Chemical, Inc.'s ("KIC") Motion for Attorneys' Fees and Costs.  Plaintiff Citizens Insurance

Company of America, as Subrogee of Graceland Fruit, Inc. ("Citizens"), and Plaintiff/Counter-

Defendant Graceland Fruit, Inc. ("Graceland") (collectively "Plaintiffs"), have opposed the Motion.

The Motion has been fully and extensively briefed and the Court finds that further briefing or

argument is unnecessary to resolve the Motion. For the reasons which follow, the Motion will be granted in part and denied in part.

## I. BACKGROUND

This case arises from a commercial transaction between Graceland and KIC for the purchase of three batches of mid-oleic sunflower oil.[1] The action is brought by Graceland and its insurer, Citizens. Graceland contracted with KIC for three shipments of the oil, as evidenced by three separate contracts dated June 29, 2001; August 21, 2001; and October 22, 2001 ("October contract"). A provision of the October contract stated, "in the event of Buyer's breach of any part of this contract, Buyer shall be liable for all Seller's damages, costs and expenses arising out of that breach including Seller's legal fees and expenses."

Graceland fully executed the first two contracts, received the oil due on the October contract, but failed to pay KIC the purchase price on the October contract. In the summer of 2004, Plaintiffs filed this action alleging, *inter alia*, breach of the contracts claiming that the oil did not meet specifications. KIC thereafter filed a counterclaim for payment under the October contract. In January 2007, KIC filed a Motion for Summary Judgment seeking dismissal of Plaintiffs' Complaint and summary judgment in favor of its counterclaim. The Court granted KIC's Motion on April 27, 2007. The Court awarded KIC the full contract price on its counterclaim, $5,610, plus post-judgment interest and reasonable attorneys' fees, based on the terms of the October contract, pursuant to Federal Rule of Civil Procedure 54. *See Citizens Ins. Co. of Am. v. KIC Chem., Inc.*, No. 1:04-CV-385, 2007 WL 1238893 (W.D. Mich. Apr. 27, 2007).

---

[1]The Court adopts by reference the background facts of this case contained in the Court's Opinion in *Citizens Ins. Co. of Am. v. KIC Chem., Inc.*, No. 1:04-CV-385, 2007 WL 1238893 (W.D. Mich. Apr. 27, 2007).

KIC filed its Motion for Attorneys' Fees and Costs on May 11, 2007.  KIC is asking for attorneys' fees in the amount of $421,122.65 and costs in the amount of $45,673.09.  Of the attorneys' fees, a portion represents work performed by Michigan attorneys, while the rest is attributable to New York attorneys at Watson, Farley & Williams LLP ("WFW").

KIC's attorneys billed at the following rates:  $225 an hour for C. Gregory Chase of WFW from June 2004 through April 2005, $235 an hour from May 2005 through December 27, 2006, and $250 an hour from December 28, 2006 through April 2007; $510 an hour for Alfred E. Yudes, Jr. of WFW from June 2004 through April 2005, and $530 an hour from May 2005 through April 2006; $365 an hour for Jane Freeburg Sarma of WFW; $150 an hour for Aaron M. Smith of Michigan-based McShane & Bowie P.L.C. from January 2005 through the end of 2006, and $160 an hour thereafter; and $210 an hour for Douglas W. Van Essen of Michigan-based Silver & Van Essen, P.C. (Aff. of Alfred E. Yudes, Jr. ¶¶ 11, 16, 21; Aff. of Aaron M. Smith ¶¶ 3, 8.)

WFW's paralegals billed KIC at the following rates: $130 an hour for Kathryn Sweet from August 2004 through April 2005, $140 an hour from May 2005 through April 2006, and $150 an hour from May 2006 through April 2007; and $180 an hour for Alexandra Sklavounakis from June 2004 through April 2005 and $190 an hour from May 2005 through April 2007. (Def. Aff. of Alfred E. Yudes, Jr. ¶¶ 25, 29.)

Based on these rates, KIC submits its $421,122.65 attorneys' fees request based on the following attorney totals: $231,315.85 attributable to Mr. Chase,[2] $62,346.30 attributable to

---

[2]KIC states that this figure represents 170.10 hours billed at $225 an hour, 527.10 hours billed at $235 an hour, and 276.70 hours billed at $250 an hour.  The Court notes that KIC's math is incorrect and that its' attorneys' customary billing rates entitle KIC to $0.15 more than was requested, for a total of $231,316.00.  This amount is not included in the Court's total awarded fees since it was not requested.

Mr. Yudes,[3] $14,271.50 attributable to Ms. Freeberg Sarma,[4] $57,145.50 attributable to Mr. Smith,[5] $3,202.50 attributable to Mr. Van Essen,[6] and $1,098.00 attributable to counsel at Duane Morris LLP in Detroit.[7]  (*Id.* ¶¶ 13, 14, 18, 19, 22, 23, 32.)  Also included in KIC's $421,122.65 attorneys' fees request is $44,440.00 attributable to Ms. Sweet[8] and $5,028.15 attributable to Ms. Sklavounakis.[9] (*Id.* ¶¶ 26, 27, 30, 31; Aff. of Aaron M. Smith  ¶¶ 5, 6, 10.)  Thus, KIC's requested attorneys' fees of $421,122.65 is comprised of $359,676.65[10] attributable to New York attorneys and paralegals and $61,446.00 attributable to Michigan attorneys.

---

[3]KIC states that this figure represents 49.80 hours billed at $510 an hour and 76.50 hours billed at $530 an hour.  The Court notes that KIC's math is again incorrect because its' attorneys actually billed more than it is asking the Court to award.  Based on the Court's calculation of the rates and hours submitted by Mr. Yudes, KIC was charged $65,943.00 for his legal services. KIC inadvertently asked the Court to award it only $62,346.30 in its Motion, resulting in a $3,596.70 difference.  The additional $3,596.70 is not included in the Court's total awarded fees since it was not requested.

[4]This represents 39.10 hours billed at $365 an hour.

[5]This represents 198.25 hours billed at $150 an hour and 171.30 hours billed at $160 an hour.

[6]This represents 15.25 hours billed at $210 an hour.

[7]This represents 3.60 hours billed at $305 an hour.  KIC was represented by counsel at Duane Morris briefly before its engagement of Silver & Van Essen.  (Def.'s Br. 3 n.1.)

[8]This represents 4.50 hours billed at $130 an hour, 215.00 hours billed at $140 an hour, and 91.70 hours billed at $150 an hour.

[9]This represents 7.00 hours billed at $180 an hour and 22.50 hours billed at $190 an hour.

[10]The Court indulges KIC's mathematical errors and treats its Motion as requesting this amount in attorneys' fees.  The figure of $359,676.65 represents the difference between Michigan attorneys' fees and KIC's total attorneys' fees request of $421,122.65.

## II.  LEGAL STANDARDS

Rule 54(d) of the Federal Rules of Civil Procedure provides that attorneys' fees and costs can be awarded to the prevailing party of a case in limited circumstances.  To be eligible for attorneys' fees, besides complying with procedural requirements, a party must file a motion for attorneys' fees and "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." FED. R. CIV. P. 54(d)(2)(B)(ii).  "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  *Id.* 54(d)(1).  The party claiming any item of cost or disbursement must, through an affidavit, state that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.  28 U.S.C. § 1924.

The primary concern in an attorneys' fees case is that the fees awarded be reasonable.  *See Blum v. Stenson*, 465 U.S. 886, 893 (1984).  If an analysis of the record persuades a court that an award of attorneys' fees is appropriate, the "lodestar" method of calculating attorneys' fees is used. The lodestar method was aptly explained by the United States Supreme Court in *Hensley v. Eckerhart*:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.  The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended."  S. Rep. No. 94-1011, p. 6 (1976).  Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private

> practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S. App. D.C. 390, 401, 641 F.2d 880, 891 (1980) (*en banc*) (emphasis in original).

461 U.S. 424, 433–34 (1983).

Reasonable hourly rates under *Hensley* equate to the customary rates charged by local attorneys of comparable experience and expertise. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). Certain cases, however, create an exception to this general rule and allow attorneys' fees to be recouped by higher-charging "out-of-town specialists." *Id.* Regarding such cases, the Sixth Circuit has said:

> When fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768–69 (7th Cir. 1982); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983). A corollary of this rule is that judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate. *Chrapliwy*, 670 F.2d at 769.

*Id.* at 535.

Adjudication of the lodestar fee does not end the analysis mandated by the Supreme Court. While there is a "strong presumption" that the lodestar represents a reasonable fee, pertinent circumstances may warrant an adjustment of the fee either upward or downward. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401–02 (6th Cir. 1995). A list of many of the factors pertinent to setting the lodestar fee and adjusting the fee was specified long ago by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714,

717–19 (5th Cir. 1974).  The *Johnson* factors have now become part of the settled law of lodestar

analysis under both Supreme Court and Sixth Circuit decisions.  These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the
> skill requisite to perform the legal service properly; (4) the preclusion of other
> employment by the attorney due to acceptance of the case; (5) the customary fee; (6)
> whether the fee is fixed or contingent; (7) time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9) the experience,
> reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the
> nature and length of the professional relationship with the client; and (12) awards in
> similar cases.

*Blanchard v. Bergeron*, 489 U.S. 87, 91 n. 5 (1989) (citing *Johnson*); *see also Paschal v. Flagstar*

*Bank*, 297 F.3d 431, 434–35 (6th Cir. 2002).  The *Johnson* factors are a "useful catalog" to consider

when exercising statutory discretion.  *Paschal*, 297 F.3d at 435.  They are not die-hard requirements

to be met.  *Crosby v. Bowater Inc. Ret. Plan*, 262 F. Supp. 2d 804, 811 (W.D. Mich. 2003).

Of course, as the Supreme Court has stated not once, but repeatedly, the resolution of a

motion for attorneys' fees should not become a "second major litigation" itself.  *Buckhannon Bd. &*

*Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001) (quoting

*Hensley*, 461 U.S. at 437).  For this reason, the Sixth Circuit has determined that district courts have

substantial discretion in determining whether to conduct an evidentiary hearing on attorneys' fees

motions.  *Bldg. Serv. Local 47*, 46 F.3d at 1402.  Consistent with this discretion, the Sixth Circuit

only requires an evidentiary hearing on an attorneys' fees dispute when it is timely requested and

when the district court is unable to resolve material factual disputes based on the affidavits and

written documentation submitted.  *Id.* (citing authorities).  In this case, the disputes between the

parties can be readily resolved based on the written materials submitted.

### III.  ANALYSIS

Plaintiffs object to KIC's Motion on various grounds: (1) KIC has not complied with Federal Rule of Civil Procedure 54(d)(2)(B); (2) the billing records of KIC's attorneys show duplicity and inefficiency; (3) various costs expended by KIC's attorneys do not warrant reimbursement; (4) the billing records of KIC's attorneys contain too much block billing and otherwise ambiguous billing; and (5) KIC falsified bills.  After addressing Plaintiffs' arguments individually, the Court will examine the *Johnson* factors in an effort to determine whether its award of attorneys' fees deserves upward or downward adjustment.

### A.  Rule 54(d)(2)(B)

Plaintiffs contend that KIC is not entitled to any attorneys' fees because KIC did not "specify the judgment and the statute, rule, or other grounds entitling" it to an award of attorneys' fees in accordance with Federal Rule of Civil Procedure 54(d)(2)(B).  If the Court was unclear in its previous Opinion concerning this issue, the Court has found that KIC is entitled to an award of attorneys' fees based on the terms of the October 2001 contract between Graceland and KIC, which entitles KIC to the additional "damages, costs and expenses arising out of the breach [of contract] including the Seller's legal fees and expenses."

### B.  Michigan Versus New York Attorneys' Rates

Plaintiffs' largest objection to the requested attorneys' fees is that it is unreasonable to award attorneys' fees for the work performed by New York counsel WFW at New York market rates. *Hensley* dictates that an award of attorneys' fees must be based on the customary rates charged by local attorneys, regardless of whether the attorneys actually employed charged more than the local rate. *See Hadix*, 65 F.3d at 536.  An exception to this general rule exists where a party can show that

8

an out-of-town attorney was reasonable under the circumstances. *See id.* at 535. To do so, the party must convince the court that (1) hiring the out-of-town attorney was reasonable in the first instance, and (2) the rates sought by the out-of-town attorney are reasonable for an attorney of his or her skill, experience, and reputation. *Id.*; *Maceira*, 698 F.2d at 40; *Chrapliwy*, 670 F.2d at 768–69.

Plaintiffs contend that local Michigan attorneys' rates should be used as the basis for reasonable rates, and suggest limiting KIC's recovery for each billable hour to $170, which was the median hourly billing rate for Michigan attorneys in 2003. *See Economics of Law Practice*, State Bar of Michigan (2003). The Court initially notes that none of the work performed took place in 2003, the base year for which Plaintiffs suggest $170 an hour is appropriate; Plaintiffs did not file their Complaint until the summer of 2004. (Compl.)

Because the rates of Mr. Smith are under $170 an hour, Plaintiffs do not argue that these fees should not be awarded to KIC based on the rate charged. Even if Plaintiffs were to concoct some argument in this regard, the Court would likewise dismiss it. As such, the Court will award the fees charged by Mr. Smith to KIC in full in the amount of $57,145.50.

Mr. Van Essen, on the other hand, charged KIC $40 an hour more than Plaintiff's suggested rated of $170 an hour. Accordingly, the Court must consider whether this rate was unreasonable. The Court notes that Mr. Van Essen is a partner at his firm with well over 20 years of litigation experience. Surely, no one would describe Mr. Van Essen as the "median" attorney in Michigan. As such, the Court finds that Mr. Van Essen's rates are reasonable and will award them in full in the amount of $3,202.50.

Regarding the rates charged by New York counsel WFW, the Court notes that local rates are traditionally the baseline that courts use for awarding attorneys' fees. *See Hadix*, 65 F.3d at 536.

The Court finds, however, that it was reasonable for KIC to employ out-of-town counsel under the circumstances of this case. WFW's work was appropriate in this litigation because of the firm's history with KIC and because of the New York connections to this case. For example, WFW attorneys drafted a substantial portion of the contracts at issue in this case, the contracts had a New York forum selection clause, and various aspects of New York law governed the case.

Mr. Yudes has been counsel to KIC for more than 20 years. (Def.'s Br. 10.) Throughout his years of service, Mr. Yudes has represented KIC in general corporate and business matters, commercial disputes, and other lawsuits. (Def.'s Reply 3–4.) Because of the New York connections to the case and WFW's past representation of KIC, it was appropriate for KIC to hire WFW to defend the action against Plaintiffs as well as pursue its counterclaim. *See generally Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 138–39 (4th Cir. 1994) (finding that an attorney who had been a party's lawyer for almost ten years and had drafted important documents for the party could not be characterized as unnecessary, even if the attorney had to travel back and forth between cities).

Plaintiffs argue that it was not necessary for a high-ranked international law firm to handle this "simple" contract dispute. Plaintiffs are correct, although this has nothing to do with the basis for the Court's ruling. WFW's longstanding representation of KIC in various matters over the years, as well as the New York connections to this case, provide the basis for upholding WFW's attorneys' fees as reasonable. Further, if KIC had hired only local counsel to represent it throughout the litigation, the costs for getting local counsel "up to speed" on the facts of the case would have surely been costly. (Def.'s Reply 5.)

On these facts, the Court is convinced that under the first prong of the *Hadix* test, KIC was reasonable in hiring WFW.  *See Hadix*, 65 F.3d at 535.  Regarding the second prong, the Court determines that the rates sought by WFW are reasonable in light of each attorney's skill, experience, and reputation.  *See id.*  KIC states that rates for partners in New York law firms can typically be upwards of $700 an hour, while rates for associates are upwards of $400 an hour.  (Def.'s Br. 4.) Upon review, the Court finds that the rates charged by WFW attorneys are entirely reasonable for the New York market.  *See Firm-by-Firm Sampling of Billing Rates Nationwide*, Nat'l L. J., Dec. 12, 2005, at S2 (finding that partners in New York in 2005 charged from $260 an hour to $830 an hour, while associates charged from $140 an hour to $555 an hour); *In Focus: Billing; A Firm-by-Firm Sampling of Billing Rates Nationwide*, Nat'l L. J., Dec. 6, 2004, at 22) (finding that senior partners in New York in 2004 charged as much as $750 an hour and junior partners charged as much as $490 an hour); *see also Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837, 2006 U.S. Dist. LEXIS 52402, at *6–7 (S.D.N.Y. Aug 1, 2006) (relying on 2005 National Law Journal billing survey); *Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*, 76 Civ. 2125, 2005 U.S. Dist. LEXIS 5200, at *35 (S.D.N.Y. Mar. 31, 2005) (relying on 2004 National Law Journal billing survey); *Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 55–58 (S.D.N.Y. 2000) (approving average billings rates of $520 for partners, $278 for associates, and $162 for paralegals in New York for the year 1999); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 51 F. Supp. 2d 302, 305 (S.D.N.Y. 1999) (finding that rates for attorneys' fees need only be "ball-park reasonable").

Along with objecting to the rates charged by attorneys, Plaintiffs object to New York counsel charging for the time they spent traveling back and forth between New York and Michigan.  Since the Court has found that it was reasonable for KIC to be represented by New York counsel, it

11

logically follows that KIC must be able to recoup attorneys' fees when its' attorneys traveled to Michigan by air and traveled within Michigan by car.

    C.  Duplication of Effort and Inefficient Practices

    Plaintiffs' next major objection asks the Court to substantially reduce KIC's attorneys' fees based on duplication of effort, excessive time spent on certain tasks, and general inefficient practices on the part of attorneys and paralegals.  A moderate reduction in attorney hours expended on a case is appropriate where counsels' billing records indicate substantial duplication of effort or inefficiency.  *Hensley*, 461 U.S. at 434 ("Cases may be overstaffed and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . .").

    Plaintiffs argue that even if it was theoretically reasonable for WFW to travel to Michigan, it was not reasonable for WFW to attend specific depositions in Michigan where local counsel was also present.  The Court must determine whether KIC's attorneys improperly staffed depositions with out-of-town counsel.  It is apparent from the record that WFW attorneys carefully tried to minimize attorneys' fees for KIC and as such, WFW attorneys were more involved in depositions where they were much more knowledgeable of the facts and issues than local counsel.  If WFW attorneys had not attended the depositions at issue, local counsel would have had to bill numerous hours to review facts in preparation for the depositions.  The Court is convinced that if this were the case, Plaintiffs would now be disputing those attorneys' fees, claiming that it would have been more cost effective for WFW attorneys to participate in the depositions, and not local counsel, because they were the most knowledgeable of the facts and issues in the case.  Accordingly, Plaintiffs' argument is untenable.

Plaintiffs object to KIC's use of local counsel at Duane Morris, primarily on the ground that KIC mistakenly retained this firm and should not be able to recover attorneys' fees for its own mistake. Plaintiffs give no support for this proposition; the record further detracts from Plaintiffs' theory. As such, this claim is without merit.

The Court is similarly unpersuaded with Plaintiffs' argument that KIC is requesting duplicate attorneys' fees. Plaintiffs suggest that various "pre-bills" of KIC's attorneys contain the same entries and conclude that these entries were each billed multiple times. After careful review, this argument is without merit because it is clear that "pre-bill" entries were not actually being billed to clients. Even though the same "pre-bill" entries showed up on multiple invoices, these entries were simply conveying to KIC the attorneys' fees it had accrued but was not yet responsible for paying. KIC clarifies the "pre-bill" confusion by stating that WFW gave KIC a deferred payment plan to ensure that it would stay financially afloat throughout the litigation; the "pre-bills" simply showed KIC what attorneys' fees were currently deferred. (Def.'s Reply 7.)

Plaintiffs' final objection claiming inefficiency stems from intra-office consultations and conferences between KIC's attorneys, many of which involved an associate and a partner. These kind of office consultations alert less experienced attorneys to litigation pitfalls and save both the federal courts and many parties avoidable legal problems and the unnecessary expenditure of resources. *Crosby*, 262 F. Supp. 2d at 816. The Court has discretion to award attorneys' fees based on time spent conferring with co-counsel, and the Court will do so here. *Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985).

D.  Costs

Plaintiffs have objected to incurred Westlaw charges, paralegal fees, taxi expenses, meal expenses, and costs for New York counsel to obtain a Certificate of Good Standing in the Western District of Michigan.  Regarding Westlaw charges, Plaintiffs claim that these costs are unreasonable because KIC's attorneys and paralegals also bill their time for using this service.  The Third, Seventh, Tenth, and D.C. Circuits have all found these types of expenses to be reasonable costs.  *See, e.g., Cont'l Ill. Sec. Litig. v. Cont'l Ill. Corp.*, 962 F.2d 566, 570 (7th Cir. 1992); *Case v. Johnson County*, 157 F.3d 1243, 1258 (10th Cir. 1998).  The logic of these cases is irrefutable.  *Crosby,* 262 F. Supp. 2d at 817.  Westlaw charges are an expense routinely billed to clients; research aides like Westlaw are necessary and proper in the studied practice of law.  A contrary rule would discourage the use of online research and make legal practice more costly and less effective.  *Id.*  In reaching this ruling, the Court also relies on the Sixth Circuit's decision in *Norcross v. Bd. of Educ.*, 611 F.2d 624, 638–39 (6th Cir. 1980) (holding that costs that are routinely charged to clients and aid in the effective practice of law constitute reasonable attorneys' fees).

Plaintiffs' next objection concerns the use of paralegal services, including both the rates charged and the alleged questionable nature of the services provided.  Hours of a paralegal are properly billed as attorneys' fees according to the United States Supreme Court.  *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  The Supreme Court found that billing paralegal work at market rate "encourages cost-effective delivery of legal services."  *Id.* at 288 (quoting *Cameo Convalescent Center, Inc. v. Senn*, 738 F.2d 836 (7th Cir. 1984)).  An exception exists to this general rule, however, for "purely clerical or secretarial tasks," which "should not be billed at a paralegal rate, regardless of who performs them." *Jenkins*, 491 U.S. at 274 n.10.  Regarding the rates charged for

paralegals in this case, this question is intertwined with whether attorneys' fees should be awarded based on the market rate of New York attorneys' fees or whether the fees must be reasonable in the Michigan market. Accordingly, the Court finds that the fees charged for all paralegals working for KIC's attorneys are reasonable since the Court has found that New York attorneys were appropriate in this litigation. After careful review of the paralegal rates and hours at issue, the Court is convinced that the work performed by paralegals was both necessary and in the ordinary course of litigation.

On a similar note, the costs incurred for obtaining Certificates of Good Standing in the Western District of Michigan—including the hours spent by WFW paralegals on this task—was a reasonable and necessary expense. Just as the Court finds that New York counsel was appropriate under the circumstances of this case, the Court also finds that it was necessary for New York counsel to obtain Certificates of Good Standing.

Plaintiffs' final cost objection is to $793.93 spent by WFW primarily on meals and taxi fares for attorneys who worked "overtime" on the case. Plaintiffs argue that these expenses are inherently unreasonable because these are mere niceties provided by WFW and cannot be recouped in a motion for attorneys' fees. KIC suggests that it is market practice in New York for law firms to provide meals and transportation when work requirements demand time in the office after regular business hours; however, KIC has provided no authority for awarding such costs. Rule 54(d) of the Federal Rules of Civil Procedure provides that costs other than attorneys' fees shall be given to the prevailing party unless the court otherwise directs. *See White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). Although the Court finds that occasional costs for meals and transportation are routinely billed by large law firms to clients, the Court will not award these costs

15

to KIC because these costs are not necessary in the course of litigation.  As such, the Court subtracts $793.93 from KIC's requested costs.

In awarding all costs requested by KIC, except those explicitly noted, the Court finds that KIC has fulfilled the requirements of 28 U.S.C. § 1924.  KIC has submitted affidavits attesting to the costs it is seeking to recoup as being correct and having been necessarily incurred in the case, and attesting to the services for which fees have been charged as being actually and necessarily performed.  (*See* Aff. of Alfred E. Yudes, Jr.; Aff. of Aaron M. Smith.)

E.  Block Billing and Ambiguous Billing

Plaintiffs make various objections to billing entries that are either ambiguous or contain too much block billing.  While the billing entries are not always as detailed as the Court prefers, the Court is satisfied that they were contemporaneously compiled and accurately reflect the number of hours each attorney and paralegal spent working on the case.  The Court finds that KIC's counsel has adequately documented their request for fees, and the Court will deny Plaintiffs' request to eliminate a substantial amount of the hours claimed by counsel for lack of proper documentation.

Plaintiffs contend that $6,422.54 worth of photocopying costs should not be reimbursed because the narratives state "null," "misc." "personal copies," or something similarly ambiguous. The Court again finds that although more detail could have been put into these narratives, they were each addressed as "photocopies" and are all reasonable in amount, so the Court will look upon them with some deference.  The Court will, however, deduct 25% of these costs from the total amount of costs that KIC can recover, resulting in only $4,816.91 being awarded to KIC.  The Court makes this adjustment because it cannot be sure that all of these photocopies were actually related to this case. The Court believes this level of adjustment is fair to both parties in light of the record before it.

16

F.  Falsified Billing

Plaintiffs argue that KIC's attorneys did not charge KIC the actual rates it is requesting in its Motion for Attorneys' Fees.  Plaintiffs suggest that KIC was actually charged less because of an existing friendship between attorneys and KIC managers.  Plaintiffs fail to provide reliable evidence to support this assertion.  The Court believes that this assertion is unsubstantiated and believes KIC's attorneys were honest and consistent in charging their customary billing rates.

G.  *Johnson* Factors

After reviewing all of Plaintiffs' specific objections, the Court will now review the *Johnson* factors one at a time in order to determine if upward or downward adjustment of the award of attorneys' fees is necessary.

1.  Time and Labor Required

KIC has not argued that this case involved any additional time or labor that was not reflected in the hourly billing rate or the number of hours billed.  The Court finds that KIC submitted quality briefs which greatly assisted in the resolution of this case.  The hours spent drafting these briefs, although sometimes substantial, did not rise to the level of being unreasonable.  The Court has scrutinized the number of hours expended on this case in accord with the principles set forth in *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), and *Grant v. Martinez*, 973 F.2d 96, 99 (2nd Cir. 1992).  As such, the Court determines that the hours devoted to this case were necessary at the time they were performed.

It is not the province of the Court to engage in an "*ex post facto* determination of whether attorney hours were necessary to the relief obtained."  *Grant*, 973 F.2d at 99 (citing *Wooldrige*).  "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but

17

whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.* Plaintiffs' objections to the work performed by KIC's attorneys rely too heavily on *ex post facto* thinking. Reasonable attorneys in the same situation as KIC's attorneys would have spent a similar amount of time preparing for this case.

### 2. Novelty and Difficulty

"Novelty and difficulty" generally refers only to cases of first impression that attempt to "make new law." *Johnson,* 488 F.2d at 718. Because the instant case is not one of first impression, KIC's attorneys have not demonstrated that an enhanced fee is necessary based on this factor.

### 3. Requisite Skill to Perform the Legal Service Properly

The third factor, skill, relates to the amount of preparation and general ability necessary. *Id.* KIC has not demonstrated that the level of skill required in this case is so great that it is not already reflected in the hourly rates.

### 4. Preclusion of Other Employment

An attorney may be precluded from accepting other employment by his work on a particular case in two ways: (1) because of conflicts of interest that arise solely from the representation, and (2) because the attorney is no longer free to use the time spent on the client's behalf working on other matters. *Id.* KIC's attorneys have not argued or demonstrated that they were precluded from other employment based upon their representation of KIC.

### 5. Customary Fee

As the Court has already stated, it was proper for KIC to engage its New York counsel to represent it in this litigation along with local counsel. The Court compared the New York attorneys'

fees to the fees charged by attorneys of comparable skill and experience in the New York market, while comparing the Michigan attorneys' fees to the Michigan market.

### 6.   Contingency of Case

When awarding attorneys' fees, courts may enhance the fee for a case taken on a contingent basis on the rationale that such cases involve a greater risk that the attorney will not recover any fee at all.  *Blum,* 465 U.S. at 902–03 (Brennan, J., concurring).   However, an enhancement for contingency may overcompensate an attorney, since it "would likely duplicate in substantial part factors already subsumed in the lodestar." *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992). KIC's attorneys charged KIC by the hour, so this factor is inapplicable.

### 7.   Time Limitations

Courts may enhance attorneys' fees when the case involves "priority work that delays the lawyer's other legal work." *Johnson,* 488 F.2d at 518.  KIC's attorneys do not ask for a higher rate based upon this factor, but do argue that due to late filings by Plaintiffs, they were forced to disregard other work and expeditiously attend to this case.  Perhaps implicitly, KIC's New York attorneys argue that costs associated with "overtime" work performed by attorneys (*i.e.* taxi fares and meals) should be recouped under this factor.  As discussed *supra*, the Court finds that these costs are not proper because they are not necessary in the course of litigation.  The Court has considered Defendant's arguments and determines that awarding these costs is not appropriate under the circumstances.

### 8.   Amount Involved and Results Obtained

An examination of the amount involved and results obtained requires a two-part inquiry: "First, did the [party seeking attorneys' fees] fail to prevail on claims that were unrelated to the

claims on which he succeeded?  Second, did the [party seeking attorneys' fees] achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Gradisher v. Check Enforcement Unit,* No. 1:00-CV-401, 2003 U.S. Dist. LEXIS, at *7 (W.D.Mich. Jan. 22, 2003) (citing *Hensley*, 461 U.S. at 434).  KIC's attorneys have argued that this factor entitles them to recover their requested attorneys' fees because of the excellent results obtained for KIC (*i.e.* the Court dismissed Plaintiffs' claims against KIC on summary judgment and granted KIC's counterclaim on summary judgment).  The Court finds that KIC's attorneys did in fact obtain very favorable results for KIC, and that the total number of attorneys' hours expended in this case is reasonable in light of the amount of time involved.  Thus, the Court finds that its award of attorneys' fees is appropriate; the fee need not be adjusted upward or downward.

### 9.  Experience, Reputation, and Ability

KIC's counsel has not demonstrated that their "experience, reputation, and ability" merit any additional enhancement not already reflected in their hourly rate.

### 10.  Undesirability

In general, undesirability enhances an attorney's fee only where taking the case will directly impact the attorney's reputation.  *See, e.g., Hill v. Royal Crown Bottling Co.,* No. 01-T-063-S, 2003 U.S. Dist. LEXIS 9526, at *12 (M.D. Ala. May 13, 2003) (enhancing an attorney's fee in civil rights litigation because accepting such litigation stigmatizes an attorney as a civil rights lawyer and deters fee-paying clients).  KIC's counsel has not argued or demonstrated that this case has stigmatized them.

### 11.   Nature and Length of Professional Relationship

WFW attorneys have apprised the Court of WFW's long-standing relationship with KIC as proof that employing WFW, even though they are located in New York and charge much higher rates than local Michigan counsel, was reasonable.  The Court considered this argument, *supra*, and found this factor to be extremely important in holding that employing out-of-town attorneys was reasonable in this case.

### 12.   Awards in Similar Cases

KIC has not argued or demonstrated that there are any similar cases which necessitate enhancing the attorneys' fees requested.

Therefore, after examination of the *Johnson* factors, the Court finds that none of the lodestar factors warrant adjustment upward or downward from its initial estimate of attorneys' fees.  The Court notes that this litigation has been long and arduous; further, the resolution of KIC's Motion for Attorneys' Fees has teetered on the brink of a "second major litigation."  It is noteworthy that KIC has not requested attorneys' fees for the time spent on resolving its Motion.  Based on this fact, as well as the various other grounds aforementioned, the Court is confident that the award of attorneys' fees is reasonable.

## IV.  CONCLUSION

For the reasons given, a Judgment shall enter awarding attorneys' fees in the amount of $421,122.65 and costs in the amount of $43,273.53, for a total of $464,396.18, in favor of Defendant KIC Chemicals, Inc. and against Plaintiff Graceland Fruit, Inc.

DATED in Kalamazoo, MI:
      October 1, 2007

            /s/ Richard Alan Enslen
           RICHARD ALAN ENSLEN
           SENIOR UNITED STATES DISTRICT JUDGE